UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
DEVAL DENIZCILIK VE TIGARET A.S.,

                     Plaintiff,           06 Civ. 15329 (MGC)

      - against -                  <u>OPINION</u>

AGENZIA TRIPCOVICH S.R.L. and BANCA
POPOLARE DI MILANO,

                    Defendants.
------------------------------------X

APPEARANCES:

        DeORCHIS WIENER & PARTNERS, LLP
        Attorneys for Plaintiff
        61 Broadway, Suite 2600
        New York, NY 10006

        By:  John A. Orzel, Esq.


        GANDOLFO LAW FIRM
        Attorneys for Defendant Banca Popolare di Milano
        2202 Bellmore Avenue
        Bellmore, New York 11710

        By:  Thomas M. Gandolfo, Esq.

**Cedarbaum, J.**

Deval Denizcilik Ve Tigaret A.S. ("Deval") sues defendant Agenzia Tripcovich S.R.L. ("Tripcovich") for confirmation of a London arbitration award and defendant Banca Popolare di Milano ("BPDM") for breach of a guarantee.  Shortly after filing the complaint, Deval obtained an *ex parte* order for attachment of wire transfers routed through New York banks.  BPDM now moves to vacate the attachment and dismiss the complaint as against it on the ground that there is no subject matter jurisdiction because the breach of guarantee claim is not within the admiralty jurisdiction of the court, and there is no other basis for federal jurisdiction.

BACKGROUND

The following facts are undisputed.

Plaintiff Deval, a Turkish corporation with its principal place of business in Istanbul, Turkey, is in the business of leasing cargo ships.  On February 20, 1997, Deval entered into a charter party with defendant Tripcovich, an Italian corporation with its principal place of business in Trieste, Italy, pursuant to which the Leyla Deval, a ship owned by Deval, was chartered by Tripcovich to carry general cargo from

Porto Nogaro, Italy to Alexandria, Egypt.  Defendant BPDM, an
Italian bank with its principal place of business in Milan,
Italy, was not a party to that agreement.

While at the load port of Porto Nogaro, the Leyla Deval
ran aground.  As a result, certain disputes arose between Deval
and Tripcovich.  To prevent Deval from exercising a maritime
lien against the cargo on board the vessel, Tripcovich supplied
Deval with a document entitled "GUARANTEE NO. FCE 35613 M.V.
'LEYLA DEVAL' C/P DD PIRAEUS 20.02.1997 GROUNDING AT P. NOGARO"
("the guarantee") (Compl., Ex. 2).  The guarantee, issued by
the Mestre, Italy branch of BPDM on March 24, 1997, provides,
in relevant part:

> In consideration of and upon condition that you
> refrain from exercising a lien on the cargo, we
> BANCA POPOLARE DI MILANO S.C.A. R.L. Mestre
> Branch, hereby undertake to pay you on your
> written demand any sum which may be adjudged to
> be due to you by the Charterers of the vessel
> "Leyla Deval," Messrs. Agenzia Tripcovich Srl, as
> a consequence of the above claim either by
> friendly written agreement between the parties
> and/or enforceable judgment by the competent
> judicial authority and/or  arbitration award,
> provided such sum will not exceed US$ 100,000
> (one hundred thousand only).

(Id.)  Deval accepted the guarantee and refrained from
exercising a lien on the cargo.

Although the charter party provides for arbitration in
London, Deval and Tripcovich tried their dispute before an

Italian court in Trieste.  After the Trieste court absolved
Tripcovich of liability, however, Deval demanded that the
parties submit the same dispute to arbitration in London.
Tripcovich refused.  Nevertheless, on April 23, 2004, a justice
of the English High Court appointed an arbitrator to hear
Deval's claim.  Tripcovich chose not to participate in the
proceedings and did not submit any defense.  On November 28,
2005, the arbitrator issued a "Final Award" against Tripcovich
– an award which Tripcovich has not paid.  The complaint
alleges that the amount Tripcovich owes is $344,377.65.

        On October 4, 2006, counsel for Deval presented BPDM with
the London arbitration award and demanded payment under the
guarantee.  BPDM refused, arguing that the award is
unenforceable because the doctrine of *res judicata* barred Deval
from arbitrating a claim previously litigated in Italy.

        Deval responded by filing this action, in which it sues
Tripcovich for confirmation of the arbitration award and
asserts a claim against BPDM for breach of the guarantee.
After meeting the minimal burden imposed upon it by Rule B of
the Supplemental Rules for Admiralty or Maritime Claims, Deval
obtained an *ex parte* order, directed to a number of banks in
the Southern District of New York, directing the attachment of
up to $344,377.65 of Tripcovich's funds, and a similar *ex parte*
order directing the attachment of up to $100,000 of BPDM's

funds.  Shortly thereafter, Deval attached $100,000 belonging to BPDM as those funds were traveling through a New York bank.

BPDM now moves to vacate the order of attachment and dismiss the complaint as against it on the ground that this court has no subject matter jurisdiction over Deval's claim for breach of the guarantee.

DISCUSSION

"A party seeking to invoke the subject matter jurisdiction of a court has the burden of demonstrating that there is subject matter jurisdiction in the case."  Shenandoah v. Halbritter, 366 F.3d 89, 91 (2d Cir. 2004).  Deval argues that its claim against BPDM falls within this court's admiralty jurisdiction because the guarantee upon which it sues is a "maritime contract."

Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction . . . ."  28 U.S.C. § 1333(1).  It is well settled that "this grant includes jurisdiction 'over all contracts . . . which relate to the navigation, business, or commerce of the sea.'"  Atlantic Mutual Insurance Co. v. Balfour Maclaine International Ltd., 968 F.2d 196, 199 (2d Cir. 1992) (quoting DeLovio v. Boit, 7 F.Cas 418, 444 (C.C.D. Mass. 1815) (No. 3,776) (Story, J.)).

5

However, the line separating maritime contracts from
nonmaritime contracts is not always easy to draw.  See <u>Norfolk
Southern Railway Co. v. Kirby</u>, 543 U.S. 14, 23, 125 S.Ct. 385,
393 (2004); <u>CTI-Container Leasing Corp. v. Oceanic Operations
Corp.</u>, 682 F.2d 377, 379 (2d Cir. 1982) ("The precise
categorization of the contracts that warrant invocation of the
federal courts' admiralty jurisdiction has proven particularly
elusive.").

In determining whether a contract is a maritime contract,
the focus of the inquiry is not on the name assigned to it but
rather on the "the nature of the services" and "the character
of work" to be performed.  <u>Ingersoll Milling Machine Co. v. M/V
Bodena</u>, 829 F.2d 293, 302 (2d Cir. 1987).  The Supreme Court
has instructed that "[t]he principle by reference to which the
cases are supposed to fall on one side of the line or the other
is an exceedingly broad one.  The only question is whether the
transaction relates to ships and vessels, masters and mariners,
as the agents of commerce." <u>Kossick v. United Fruit Co.</u>, 365
U.S. 731, 736, 81 S.Ct. 886, 890 (1961) (internal quotation
marks and citation omitted).  Thus, the Second Circuit has held
that "[i]f the subject matter of the contract relates to a ship
in its use as such, or to commerce or to navigation on
navigable waters, or to transportation by sea or to maritime
employment it is fairly said to constitute a maritime

contract." Ingersoll, 829 F.2d at 302 (internal quotation
marks and citation omitted).

BPDM argues that Deval's claim against it is not
cognizable in admiralty because the guarantee upon which Deval
sues is not a maritime contract. It points out that no
maritime services were to be performed by BPDM, nor was BPDM to
receive such services, nor did BPDM become a party to the
underlying charter party or assume the obligations of
Tripcovich when it issued the guarantee. Instead, BPDM
characterizes the guarantee as a promise to pay up to $100,000
should an enforceable judgment or award be issued against a
particular bank customer. According to BPDM, the subject
matter of the guarantee is BPDM's obligation to pay damages,
and the fact that the bank customer happened to be a ship
charterer does not render the guarantee a maritime contract.

In support of this argument, BPDM relies on Fednav, Ltd.
v. Isoramar, S.A., 925 F.2d 599 (2d Cir. 1991). In Fednav, an
assignee of a subrogated marine underwriter sued the lessee of
a ship after a shipment of steel was damaged on its way from
Germany to Chicago. Id. at 600. After the lessee settled the
claim for $5,000, the shipowner allegedly agreed to contribute
50 percent of the settlement and 50 percent of the lessee's
legal fees. Id. When the shipowner failed to pay, the lessee

sued.  Id.  The question before the court was whether the
shipowner's promise to contribute was a maritime contract.

The court held that it was not.  While a charter party is
a maritime contract, "merely agreeing as a surety to pay
damages for another's breach of a maritime charter is not a
maritime contract."  Id. at 601 (internal quotation marks and
citation omitted).  This is because

> the direct subject-matter of the suit is the
> covenant to pay such damages, which neither
> involves maritime services nor maritime
> transactions; and . . . the mere fact that the
> event and measure of liability are referable to
> the charter party does not make the [agreement to
> pay] a maritime contract, nor make its obligation
> maritime in a jurisdictional sense.

Id. (quoting Pacific Surety Co. v. Leatham & Smith Towing &
Wrecking Co., 151 F. 440 (7th Cir. 1907)).  After describing
the subject matter of the shipowner's agreement as a "promise
to contribute to the settlement of the cargo dispute," the
court held that the agreement was "not maritime in nature
because it involves neither maritime services nor maritime
transactions."  Id. at 601-602.

According to BPDM, Fednav compels the conclusion that
Deval's claim for breach of the guarantee is not cognizable in
admiralty.  But Fednav is distinguishable in a crucial respect.
BPDM did not merely promise to pay money should Tripcovich be

held liable.  Rather, it promised to pay money *in order to prevent Deval from exercising a maritime lien* upon cargo belonging to Tripcovich.  In other words, the guarantee was issued as a substitute for the cargo.  The terms of the guarantee reflect this fact.  (Compl., Ex. 2) ("In consideration of and upon condition that you refrain from exercising a lien on the cargo, we . . . hereby undertake to pay you . . .").  And counsel for BPDM confirmed it at oral argument.  (Hr'g Tr. 10, June 21, 2007) ("The bank was clearly aware that the reason it was asked to issue its personal promise based on its net worth was because the cargo was going to be moved off ship.").

BPDM issued the guarantee in order to free Tripcovich's cargo from the threat of a maritime lien.  Tripcovich's cargo would not have been released had BPDM not issued the guarantee. BPDM's guarantee, which ultimately hastened the delivery of the cargo by sea, is not merely a contract to contribute to the settlement of a maritime claim; rather, it is a contract whose purpose is directly traceable to the presence of cargo onboard a seagoing vessel.  Thus, the subject matter of the guarantee is related to "commerce . . . on navigable waters" and "transportation by sea."  <u>Ingersoll</u>, 829 F.2d at 302.  The guarantee is therefore a maritime contract.

CONCLUSION


For the foregoing reasons, BPDM's motion to vacate the order of attachment and dismiss Deval's complaint for lack of subject matter jurisdiction is denied.


SO ORDERED.

Dated:    New York, New York
          September 28, 2007

                      S/_____
                          MIRIAM GOLDMAN CEDARBAUM
                          United States District Judge